LEHIGH VALLEY RAILROAD COMPANY, PLAINTIFF, v. UNITED LEAD COMPANY, DEFENDANT.

Argued January 20, 1926—Decided May 13, 1926.

1. Under *Pamph. L.* 1912, *p.* 389, § 26, rule No. 40 of the Supreme Court abolishing demurrers, points of law may be raised in the answering pleadings and may be disposed of on a motion before trial.

2. Contracts which violate the provisions of a statute are illegal. When there are a number of considerations, and one of them is illegal, the whole agreement is avoided, this doctrine being put upon the ground of the impossibility of saying how much or how little the void portion may have had as an inducement to the contract.

3. The court will not aid either party to an illegal contract, but will leave the parties just where it finds them, unless the legal part is separable from the illegal part.

4. The contract sued on in this case, dated February 27th, 1904, violates the statutes of the congress of the United States and of

the State of New Jersey. The consideration is based upon mutual interwoven and interrelated covenants, so, the whole contract falls.

On objections in point of law on pleadings.

Before Justices PARKER, MINTURN and BLACK.

For the plaintiff, *Hobart & Minard.*

For the defendant, *Wall, Haight, Carey & Hartpence.*

The opinion of the court was delivered by

BLACK, J. The questions of law presented for decision in this case arise out of a motion on the pleadings under *Pamph. L.* 1912, *p.* 389, § 26—rule No. 40 of the Supreme Court, which takes the place of a demurrer to a pleading.

The questions involved, stated broadly, are:

*First.* Is the contract sued on illegal as being in violation of statutes?

*Second.* If so, is the legal part separable from the illegal part, so, that, the illegality of the one does not affect the validity of the other?

The suit was brought by the plaintiff to recover $1,726.59 money expended by the plaintiff in making repairs to damaged cars caused by a fire on May 16th, 1922, while the cars were standing on one of the sidings built pursuant to an agreement between the parties, dated February 27th, 1904. The agreement is (*Exhibit A*) attached to the complaint. It covers ten pages of the printed paper book and it is somewhat complicated. It provides for the selling by the plaintiff to the defendant a tract of land located in the city of Perth Amboy, New Jersey, of thirty-three and twenty-six one-thousandths acres. It contains sixteen clauses or covenants of which the twelfth and sixth are the ones pertinent to this inquiry. The plaintiff's suit is brought under the twelfth clause, which is as follows: "The said lead company hereby covenants and agrees to indemnify and save harmless the said

Lehigh company from and against all loss of or damage to cars and the contents thereof by fire, explosion or other causes whatsoever, while standing on the siding or sidings aforesaid, or [if the shifting is being done by employes of the lead company] while being shifted to or from the same; provided, the cause of such loss or damage does not directly arise by reason of the negligence of the said Lehigh company or its employes."

The pertinent parts of the sixth clause provide that the Lehigh company will build track connection from its own tracks to the lead company's property, the Lehigh company furnishing all necessary track material and labor, such tracks shall remain the property of the Lehigh company. The maintenance of such tracks shall be at the expense of the Lehigh company during the life of the agreement, proper gates will be provided at the entrance of the Lehigh company's tracks into the grounds, keys will be furnished to the Lehigh company. Construction of track connections to commence upon thirty days' written notice between its present rails and the lead company's property, and to complete the same at the earliest practicable date. Re-location of the tracks already constructed to be at the expense of the lead company. Lehigh company to furnish the material for any temporary tracks on the lead company's grounds based upon a nominal rental for the material during the time the tracks are in such temporary use.

The agreement further provides the lead company shall have the right to purchase the sidings, &c.

The Lehigh company shall have exclusive track connection to the lead company's works, and no other railroad company shall be permitted to lay or maintain tracks thereto or within the same. The Lehigh company will perform switching service for the lead company to and from said premises. The lead company will ship, or cause to be shipped, over the railroad of the Lehigh company all its freight, &c. The lead company will give preference to the lighterage lines connected with the Lehigh valley system. &c.

The record shows a complaint, as stated, alleging there is due the plaintiff $1,726.59, with interest, from May 16th, 1922, under the twelfth clause of the agreement above recited. The agreement, *"Exhibit A,"* is attached. The counter-claim demands the sum of $31,844.18 expended under the sixth clause of the agreement above recited containing an itemized schedule attached. Then a reply to the answer and an answer to the counter-claim by the plaintiff setting up the fact that under the agreement of February 27th, 1904, such services, or any of them, as set up in the counter-claim, are illegal and void and contrary to public policy, because, in violation of certain statutes enacted by the congress of the United States, to wit: "An act to regulate commerce," approved February 4th, 1887, and act entitled "An act to further regulate commerce with foreign nations and among the states," approved February 19th, 1903, known as the Elkins act; an act entitled "An act to amend an act entitled 'An act to regulate commerce,' approved February 4th, 1887, and all acts amendatory thereof, and to enlarge the powers of the interstate commerce commission," approved June 29th, 1906, known as the Hepburn act; because such services would be an unjust discrimination, an undue and unreasonable preference or advantage and a rebate or concession in favor of the defendant, as defined by the Supreme Court of the United States; that it is also, in violation of an act of the legislature of New Jersey entitled "An act concerning public utilities; to create a board of public utility commissioners and to prescribe its duties and powers," approved April 21st, 1911. *Pamph. L.* 1911, *p.* 374.

That the contract is also in violation of the proclamation of the president of the United States, dated December 26th, 1917, taking possession and assuming control of the plaintiff's railroad, and continued until March 1st, 1920.

The defendant filed a rejoinder to the plaintiff's reply and a reply to the answer to the defendant's counter-claim.

Then, under the statute above cited, the defendant objects, and asserts that, in point of law, the plaintiff's position

is untenable, and that the matters set forth in the plaintiff's answer to the defendant's counter-claim do not constitute a valid legal defense to the counter-claim of the defendant.

A reading of the decisions of the United States Supreme Court and our own decisions satisfy us that the agreement of February 27th, 1904, under which the plaintiff seeks to recover is in violation, not only of the acts of congress, but of the act of the legislature of New Jersey, as being a discrimination and concession or preference. It would serve no useful purpose to review the many decisions bearing upon this point. The decisions in the United States Supreme Court, such as *New York, &c., Railroad Co.* v. *Interstate Commerce Commission,* 200 *U. S.* 399; *Armour Packing Co.* v. *United States,* 209 *Id.* 56; *Louisville, &c., Railroad Co.* v. *Mottley,* 219 *Id.* 467, and the decisions in our courts, such as *Public Service Electric Co.* v. *Board of Public Utility Commissioners,* 87 *N. J. L.* 128; *affirmed,* 88 *Id.* 603; *Edison Storage Battery Co.* v. *Board of Public Utility Commissioners,* 93 *Id.* 301, are illuminating, and they illustrate many other decisions on this topic. So, a promisor is excused from performance of a contract, lawful when made, when its performance is subsequently made unlawful. *Public Service Electric Co.* v. *Public Utility Commissioners,* 87 *Id.* 128; *affirmed,* 88 *Id.* 603.

A contract which violates the provisions of a statute is the simplest example of an illegal contract. The authorities and text-book writers are all in accord in stating that agreements in contravention of statutes are void. Our Court of Errors and Appeals has so held in the case of *Brooks* v. *Cooper,* 50 *N. J. Eq.* 761; 21 *L. R. A.* 621; in that case the decisions of the courts are reviewed at some length. It is there said the contract itself and its tendency are the tests of its illegality.

Vice Chancellor Van Fleet, in the case of *Cannon* v. *Cannon,* 26 *N. J. Eq.* 316, said a contract which contravenes the provisions or policy of an act of congress is, unquestionably, void.

So, *Blasdel* v. *Fowle,* 120 *Mass.* 447. Many illustrative cases will be found collected in 6 *R. C. L.* 699, § 105 *et seq.,* and in 13 *Corp. Jur.* 412, § 341 (2).

The court will not aid either party to an illegal contract, but will leave the parties just where it finds them. *Brooks* v. *Cooper,* 50 *N. J. Eq.* 761; *Hope* v. *Linden Park Asso.,* 58 *N. J. L.* 627; *Ellicott* v. *Chamberlin,* 38 *N. J. Eq.* 604.

When the illegal parts are in no way involved with, or dependent upon, each other, the legal part is separable from the illegal part, the illegality of the one does not affect the validity of the other. *Stewart* v. *Lehigh Valley Railroad Co.,* 38 *N. J. L.* 505, 521.

But, there are many decisions to the effect, said Chief Justice Beasley, in the case of *Erie Railway Co.* v. *Union Locomotive, &c., Co.,* 35 *N. J. L.* 240, 247, that, when there are a number of considerations, and one of them is illegal, the whole agreement is avoided, this doctrine being put upon the ground of the impossibility of saying how much or how little weight the void portion may have had as an inducement to the contract. This is the precise situation we find in this case. The consideration of the contract in this case is based upon mutual, interwoven and interrelated covenants, so, the whole contract falls. If the plaintiff is not obliged to reimburse the defendant for its expenditures in maintaining the sidings, which, under the contract, the plaintiff was obligated to maintain, then the defendant is not obligated to reimburse the plaintiff for the loss sustained by the burning of the cars.

We conclude, therefore, that the defendant is not liable in this action, and under rule 40 of the Supreme Court (*Pamph. L.* 1912, *p.* 389, § 26) above cited, judgment should go for the defendant on the plaintiff's claim, and judgment should go for the plaintiff on the defendant's counter-claim.

A rule may be entered accordingly.